IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | NO. 3:23-CR-0460-M |
| COREY WILSON | |

## GOVERNMENT'S TRIAL BRIEF

In anticipation of the arguments the defendant will make at trial—that the devices he sold to undercover ATF agents were of too poor quality to constitute a machinegun as defined in 28 U.S.C. § 5845(b)—the government provides this brief to the Court in order to support its position that the quality of the machinegun conversion device (and, by extension whether it is successful in converting a semiautomatic firearm into one that is fully automatic) is not an element of the charged offense and therefore unnecessary to support a guilty verdict.

### Background

The facts of the case are largely undisputed. Agents with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) learned of an Instagram account selling what they believed to be machinegun conversion devices in the Northern District of Texas. They contacted the operator of that account through Instagram—later discovered to be the defendant—and in an undercover capacity arranged for the sale of six of these devices.

As they were purchasing the six devices, the undercover agents discussed purchasing twenty more devices if the first six worked as designed. The defendant told

the agents that because "we" make them, they would work and could arrange for a better price. The defendant did not specify who the "we" he was referring to, but assured the agents that the six devices would function properly. Shortly after the agents completed the first undercover transaction with the defendant, they contacted him again and arranged to purchase twenty more devices. The defendant told the agents that it would take a little time to fulfill the order but that he would contact them when the devices were ready. The defendant did so a few days later and the undercover agents purchased twenty more devices from the defendant.

ATF Firearms Enforcement Officer (FEO) Eve Eisenbise inspected 11 of the 26 devices the defendant sold to the undercover agents—6 from the first transaction and 5 from the second—and concluded that each device is a part designed and intended solely and exclusively for use in converting a weapon into a machinegun and is therefore a machinegun as defined in 26 U.S.C. § 5845(b). She later test-fired two of the devices—one from each batch that the defendant sold the undercover agents and the two alleged in Counts One and Two of the superseding indictment—and documented her results. The government intends to call FEO Eisenbise as a witness to testify to her analysis of the 11 devices and the underlying science to support her conclusions. The government also intends to elicit testimony from FEO Eisenbise as to why test-firing the devices bolsters her conclusion that they are machineguns.

## Authority

Wilson is charged with two counts of possessing an unregistered machinegun, in violation of the National Firearms Act (NFA). A "machinegun" is included in the

National Firearms Act (NFA) definition of a "firearm."  *See* 26 U.S.C. § 5845(a)(6).  The NFA defines "machinegun" to include "any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger," as well as "any part *designed and intended solely and exclusively*, or combination of parts designed and intended, for use in converting a weapon into a machinegun . . ."  26 U.S.C. § 5845(b) (emphasis added).  The plain language of the statute clearly covers machineguns themselves and machinegun conversion devices.

The Fifth Circuit has not yet addressed applicability of the statute to the specific type of machinegun conversion device at issue here, that is a "Swift Link" device which is sometimes informally referred to as an "auto sear."  The Supreme Court recently explained that an "auto sear" is a device that is installed in an AR-15 style rifle that converts it from semiautomatic fire (that is, expelling one projectile with each pull of the trigger) to fully automatic fire (expelling more than one projectile with each trigger pull).  *Garland v. Cargill*, 602 U.S. 406, 420 n.4 (2024) (contrasting a "bump stock" which uses the recoil energy of a rifle to simulate automatic fire with an "auto sear.")

The Fifth Circuit has, however, held that conversion kits, assembled on trigger housings, designed and intended for use in converting a standard semiautomatic M-1 rifle into an M-2 automatic rifle, constituted a machinegun under 26 U.S.C. § 5845(b).  *United States v. Campbell*, 427 F.2d 892, 893 (5th Cir. 1970).  The *Campbell* court concluded that the "proof clearly showed that the kits were designed and intended for use in converting a standard M-1 carbine into a 'machine gun' as defined in the statute."  *Id.*

Government's Trial Brief—Page 3

Additionally, other circuits have held that conversion devices similar to the ones at issue here—that can convert semiautomatic rifles into fully automatic rifles—are machineguns under the statute. For example, the Seventh Circuit confirmed that "auto sears" sold to undercover agents were machineguns as defined by 26 U.S.C. § 5845(b). *United States v. Cash*, 149 F.3d 706, 706-07 (7th Cir. 1998); *see also United States v. Was*, 869 F.2d 34 (2d Cir. 1989) (holding that an "auto sear" is a combination of parts designed and intended to convert a weapon into a machinegun). Likewise, the devices do not need to be installed or even owned in conjunction with a compatible rifle. *See Roe v. Dettelbach*, 59 F.4th 255, 257 (7th Cir. 2023).

Recently, a district court in the Eastern District of Michigan conducted a thorough analysis of the relationship between machinegun conversion devices—specifically "Glock conversion devices" and "Drop-In Auto Sears," both devices that function similarly to a "Swift Link" device—and 26 U.S.C. § 5845(b). *United States v. Farmer*, No. 2:22-CR-20678, 2024 WL 1020537, at *3 (E.D. Mich. Mar. 8, 2024). The court first distinguished the "auto sear" from a "bump stock"—a device installed on the end of a rifle that uses the recoil energy to simulate automatic fire but is not by definition a machinegun. *Id*. The court then found the "Glock conversion devices" and the "Drop-In Auto Sears" were machineguns despite requiring significant machining to fire based on the "plain, unambiguous language of the statute." *Id.* at *4.

The Fifth Circuit has recognized that whether a device is a machinegun hinges on whether the device was "designed to shoot . . . automatically," not on whether it in fact effectively shoots as designed. *United States v. Husain*, 117 F. App'x 353, 354 (5th Cir.

Government's Trial Brief—Page 4

2004) (declining to find that Husain was prejudiced by his attorney's failure to introduce a report regarding the firing capabilities of the firearms at issue). Following that logic, firearms or machinegun conversion devices that malfunction can still be machineguns under 26 U.S.C. § 5845(b). The Seventh Circuit has also analyzed the adverb "automatically" in relation to the verb "shoots" and concluded that a weapon cannot cease to be a machinegun simply because it malfunctions. *United States v. Olofson*, 563 F.3d 652, 658 (7th Cir. 2009). And the Ninth Circuit has held that even an inoperable machinegun that required restoration using rare parts or a highly skilled mechanic met the statutory definition of a machinegun. *United States v. Kindred*, 931 F.2d 609 (9th Cir. 1991).

The government anticipates FEO Eisenbise to testify the two devices she installed to test-fire required some adjustment before her rifle would expel multiple projectiles with a single pull of the trigger. Those manipulations did not change her conclusion that the devices that the defendant sold to the undercover ATF agents were machineguns under 26 U.S.C. § 5845(b).

Whether the defendant possessed unregistered machineguns is of course ultimately a matter of fact for this Court to decide. However, the government has attempted to anticipate some issue that will arise at trial and provide the above authority for this Court's convenience.

        Respectfully submitted,

        CHAD E. MEACHAM
        ACTING UNITED STATES ATTORNEY

        *s/ Robert Withers*
        ROBERT WITHERS
        Assistant United States Attorney
        Texas Bar No. 24072758
        1100 Commerce Street, Third Floor
        Dallas, Texas 75242-1699
        Telephone: 214-659-8600
        Facsimile: 214-659-8805
        Email: Robert.Withers@usdoj.gov