IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | NO. 3:23-CR-0460-M |
| v. | |
| COREY WILSON | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

### Procedural Background

On January 28, 2025, the grand jury returned a Superseding Indictment charging Corey Wilson with two counts of possession of an unregistered machinegun, in violation of 26 U.S.C. §§ 5841, 5845(a)(6) and (b), and 5861(d). That indictment specifically alleged that Wilson possessed "a firearm, to wit: a machinegun, as defined in 26 U.S.C. § 5845(a)(6) and (b), further described as a machinegun conversion device (sometimes referred to as a Swift Link)" on or about May 30, 2023, and June 3, 2023. Wilson knowingly and voluntarily waived his right to an arraignment hearing and entered a plea of not guilty.

Wilson waived his right to trial by jury. With the government's consent, this Court held a bench trial on February 10, 2025.

### Findings of Fact

1. Beginning in May 2023, agents with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) began investigating whether machinegun conversion devices (MCDs), sometimes known as Swift Links, were being advertised for sale on an Instagram account operated by Defendant Corey Wilson, 18, under the name

Findings of Fact and Conclusions of Law—Page 1

"Risktakker214." On the "Risktakker214" Instagram account, Wilson made posts including the following:

    a.    A photograph that depicts three parts that appear to resemble MCDs with the title "#Art" and the caption "Lmk [let me know] fully Auto (AR Only)[.]"

    b.    A video showing one of the MCDs being removed from, and then added back into, an AR-style rifle platform. The entire time the video is playing, a black box is super-imposed that says "$150[.]"

    c.    A video of someone in a dark room firing an AR-style rifle that is fully automatic. The entire time the video is playing, a phrase is super-imposed that says "$150 come get rite (Ar only)[.]"

Wilson is not depicted in any of the posts described above. However, Wilson posted these items on his account to advertise that the product advertised would make an AR-style firearm fully automatic at a price of $150 per device.

    2.    On May 18, 2023, ATF undercover agents contacted Wilson via Instagram to inquire about purchasing some of the parts advertised by Wilson on "Risktakker214." They moved the conversation to text messages and Wilson asked the agents whether they "still need da drop N [drop-in]," a phrase commonly used as slang for a type of MCD. The agents asked to purchase four MCDs, and Wilson agreed to the sale.

    3.    One week later, Wilson agreed to sell four MCDs to the undercover agents via text message, writing "4 fa $400 [four for $400]" "2hunnid off [$200 off the total price]." When agents asked if the parts functioned properly, Wilson replied, "Hy [Hell yeah] fs [for sure] I got da hoe in mine"—meaning that Wilson had one MCD installed in his personal firearm and that it functioned as intended.

4. As a result of their conversations, the agents and Wilson agreed to meet outside the McDonald's where Wilson worked, on May 30, 2023. That McDonald's was located at 5960 Greenville Avenue, Dallas, Texas, which is in the Dallas Division of the Northern District of Texas (NDTX). At that meeting, agents purchased six MCDs for $300. Wilson conceded that the MCDs were "bendy," but assured the agents that the MCDs would not break. Wilson explained how the MCDs had to be "activated"—meaning adjusted during installation, and demonstrated how to place one of the parts inside the receiver of an AR-style firearm to ensure that it was "fully"—meaning functioning as a fully automatic firearm.

5. The next day, the undercover agents messaged Wilson to tell him that the devices they had purchased the previous day worked and asked for the price to purchase 20 more of the same devices. On June 2, 2023, Wilson agreed to sell 20 MCDs for $850, as soon as they could be made.

6. On June 6, 2023, the undercover agents and Wilson agreed to meet at 9600 Golf Lakes Trail, Dallas, Texas—which is in the Dallas Division of the NDTX—to purchase 20 more devices for $850. The agents again told Wilson that the MCDs they had purchased the week before worked as intended. Wilson told the agents that these devices looked different than the previously purchased ones but that they would function the same way. The agents purchased 20 more MCDs from Wilson for $850.

7. Eleven of the 26 MCDs—six from the May 30 sale and five from the June 6 sale—were sent to the ATF Firearms & Ammunition Technology Division for a determination. That determination concluded that the MCDs were a device sometimes

referred to as a Swift Link designed for use with an AR-15 semi-automatic's fire control parts and an M16 machinegun bolt carrier. Like a "drop in," a Swift Link is a type of MCD which is typically, but not always, made from a thin piece of metal in an "s" shape. The MCD works by pressing down on the disconnector, causing the hammer to go forward, striking the firing pin; as a result, the AR-type firearm shoots automatically. These devices are "machineguns" as defined in 26 U.S.C. § 5845(b). Being "machineguns," each are also a "firearm" per the definition in 26 U.S.C. § 5845(a)(6).

8. On December 4, 2023, the ATF test fired two of the MCDs purchased from Wilson, using an ATF owned AR-15. Specifically, the ATF conducted six test fires with one of the MCDs purchased on May 30 (charged in Count One) and five test fires with one of the MCDs purchased on June 6 (charged in Count Two). The results of the test fires are as follows:

| Test Round | Exhibit Installed | Rounds Loaded | Rounds Expelled |
|---|---|---|---|
| 1 | 1 | 2 | 1 |
| 2 | 1 | 2 | 1 |
| 3 | 1 | 2 | 1 |
| 4 | 1 | 3 | 2 |
| 5 | 1 | 3 | 2 |
| 6 | 7 | 5 | 3 |
| 7 | 7 | 2 | 1 |
| 8 | 7 | 2 | 1 |
| 9 | 7 | 4 | 2 |
| 10 | 7 | 2 | 2 |
| 11 | 7 | 3 | 3 |

9. At least twice for each of the two MCDs tested, the AR-15 fired multiple rounds. None of the MCDs that Wilson sold to the ATF had any serial numbers or were

registered in the National Firearms Registration and Transfer Record. Wilson did not register any of the MCDs in the National Firearms Registration and Transfer Record.

## Conclusions of Law

**Essential Elements of the Offense**

1. To prove the offenses alleged in Counts One and Two of the Superseding Indictment, charging violations of the National Firearms Act, 26 U.S.C. §§ 5841, 5845(a)(6) and (b), and 5861(d), that is, possession of an unregistered machinegun, the government must prove each of the following beyond a reasonable doubt:

| | |
|---|---|
| First: | That the defendant knowingly possessed a firearm; |
| Second: | That this firearm was a machinegun as defined in 26 U.S.C. § 5845(b); |
| Third: | That the defendant knew of the characteristics of the firearm that caused it to be a machinegun; |
| Fourth: | That this firearm was or could readily have been put in operating condition; and |
| Fifth: | That this firearm was not registered to the defendant in the National Firearms Registration and Transfer Record. It does not matter whether the defendant knew that the firearm was not registered or had to be registered. |

2. The term "firearm" means "a machinegun." 26 U.S.C. § 5845(a)(6).

3. The term "machinegun" means "any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a

weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person." 26 U.S.C. § 5845(b).

4. It is only necessary for the government to prove that the defendant knew that the item he possessed had the characteristics that brought it within the statutory definition of a firearm, not that the defendant knew his possession was unlawful or that the firearm was unregistered. *Rogers v. United States*, 522 U.S. 252, 254–55 (1998) (plurality opinion) (citing *Staples v. United States*, 511 U.S. 600 (1994); *United States v. Freed*, 401 U.S. 601 (1971)); *see also United States v. Kay*, 513 F.3d 432, 448 (5th Cir. 2007).

5. "'[I]gnorance of the law' (or a 'mistake of law') is no excuse . . . where a defendant has the requisite mental state in respect to the elements of the crime but claims to be unaware of the existence of a statute proscribing his conduct." *Rehaif v. United States*, 588 U.S. 225, 234 (2019).

6. Here, the government proved Wilson knew the MCDs he sold to the ATF on May 30 and June 6 were designed and intended solely and exclusively for use in converting a weapon into a machinegun.

7. The Superseding Indictment alleged "[o]n or about June 3, 2023," as the date associated with the meeting between the ATF agents and Wilson underpinning Count Two. The evidence at trial and the parties' stipulation, however, established that that meeting took place on June 6, 2023. "If an indictment uses the term 'on or about' to allege a date, the government is 'not required to prove the exact date; it suffices if a date

reasonably near is established.'" *United States v. Knowlton*, 993 F.3d 354, 359 (5th Cir. 2021) (quoting *United States v. Valdez*, 453 F.3d 252, 260 (5th Cir. 2006)). *See also United States v. Grapp*, 653 F.2d 189, 195 (5th Cir. 1981) (citing *Russell v. United States*, 429 F.2d 237, 238 (5th Cir. 1970)). June 6, 2023, is reasonably near to June 3, 2023. *See Knowlton*, 993 F.3d at 359 (compiling cases establishing that the Fifth Circuit has "previously found that temporal variances of up to twelve months were not material"); *United States v. Leibowitz*, 857 F.2d 373, 379 (7th Cir. 1988) (finding that September 21 and October 12 were "reasonably close, particularly given the 'on or about' designation").

8. For a machinegun, the central characteristic that causes it to be a machinegun is whether it will "automatically [shoot] more than one shot, without manual reloading, by a single function of the trigger." 26 U.S.C. § 5845(b). The size of the device and number of bends in its components are irrelevant as long as the component is otherwise designed and intended solely and exclusively to convert a weapon into a machinegun. The MCDs Wilson sold were designed and intended solely and exclusively to convert a weapon into a machinegun.

9. Machineguns do not have to be of high quality to be machineguns. Whether a device is a machinegun hinges upon whether it was "designed to shoot . . . automatically," not on whether it, in fact, effectively shoots as designed. *See United States v. Husain*, 117 F. App'x 353, 354 (5th Cir. 2004). A weapon does not cease to be a machinegun simply because it malfunctions. *United States v. Olofson*, 563 F.3d 652, 658 (7th Cir. 2009). Indeed, even an inoperable machinegun that requires restoration

using rare parts or a highly skilled mechanic meets the statutory definition of a machinegun. *See United States v. Kindred*, 931 F.2d 609, 610 (9th Cir. 1991).

10.  Here, the MCDs Wilson sold were designed to press down on the disconnector of an AR-15 rifle preventing it from catching the hammer and allowing the firearm to cycle automatically. Therefore, the unregistered MCDs were designed and intended solely and exclusively for use in converting a weapon into a machinegun.

11.  Additionally, although the government was not required to prove that the MCDs worked as designed, the evidence showed that they did in certain instances. As noted above, on multiple occasions, rifles fitted with some of Wilson's MCDs fired more than one shot, without manual reloading, by a single function of the trigger. The Court would have found Wilson guilty of the offenses charged even if the MCDs did not work at the ATF's test because they were designed and intended to convert an AR-15 into a fully automatic weapon.

**The National Firearms Act is not unconstitutionally vague.**

12.  At trial, Wilson argued that the National Firearms Act is unconstitutionally vague. The Court finds that the National Firearms Act is neither vague on its face nor as applied to the defendant.

13.  The National Firearms Act is not unconstitutionally vague on its face because it "give[s] ordinary people fair notice of the conduct it punishes." *Johnson v. United States*, 576 U.S. 591, 595 (2015). A criminal statute is not unconstitutionally vague if it defines "the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage

arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983). There is a strong presumption supporting the constitutionality of legislation. *See United States v. Nat'l Dairy Prods. Corp.*, 372 U.S. 29, 32 (1963).

14. An ordinary person would understand that the National Firearms Act criminalizes the possession (without registration) of the devices at issue here. The statutory language is clear and unambiguous, defining a machinegun as, among other things, "any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun." The plain language of the statute provides fair notice of the proscribed conduct. Indeed, the Fifth Circuit has rejected a vagueness argument to materially identical statutory language. In *United States v. Campbell*, the Court examined the phrase "any combination of parts designed and intended for use in converting a weapon into a machine gun." 427 F.2d 892, 893 (5th Cir. 1970). In *Campbell*, the court rejected the appellant's argument that the language was "not sufficiently clear to put any person of reasonable intelligence on notice as to what is forbidden." *Id.*

15. The statute is also not unconstitutionally vague as it applies to Wilson. Any ordinary person would understand that advertising the sale of devices designed to convert a semiautomatic firearm into a fully automatic firearm would violate the law.

16. At trial, Wilson suggested that the Superseding Indictment's use of the phrase "Swift Link" failed to put him on notice of the charged conduct. Yet, Wilson waived any challenge to the indictment by failing to raise it in a pretrial motion. *See* Fed. R. Crim. P. 12(b)(3)(B); *United States v. Whitfield*, 590 F.3d 325, 359 (5th Cir. 2009).

Findings of Fact and Conclusions of Law—Page 9

Further, the Superseding Indictment—which tracked the relevant statutory language and charged the defendant with possessing "a machinegun conversion device (*sometimes referred to as a Swift Link*)"—provided adequate notice of the charges. Instead of focusing on whether the government proved that the devices would convert an AR-style firearm into a fully automatic machinegun as defined by statute, Wilson focused on the materials used to create, and different bends and measurements of, a subtype of MCDs. However, the materials, bends, and measurements do not change the fact that the devices sold by Wilson were designed and intended to convert a semiautomatic firearm into a machinegun. The statute is not unconstitutionally vague, and thus the Court rejects Wilson's constitutional challenge.

## Conclusion

The Court finds that the government has proven beyond a reasonable doubt each of the elements of the violations of the National Firearms Act, 26 U.S.C. §§ 5841, 5845(a)(6) and (b), and 5861(d), that is, possession of an unregistered machinegun on or about May 30, 2023, and June 3, 2023, within the Dallas Division of the Northern District of Texas, namely:

1. That the defendant knowingly possessed a firearm;

2. That this firearm was a machinegun as defined in 26 U.S.C. § 5845(b);

3. That the defendant knew of the characteristics of the firearm that caused it to be a machinegun;

4. That this firearm was or could readily have been put in operating condition; and

> 5. That this firearm was not registered to the defendant in the National Firearms Registration and Transfer Record. It does not matter whether the defendant knew that the firearm was not registered or had to be registered.

Accordingly, the Court hereby finds the defendant guilty beyond a reasonable doubt of the crimes charged in Counts One and Two of the Superseding Indictment.

**SO ORDERED.**

March 27, 2025.

_____
BARBARA M. G. LYNN
SENIOR UNITED STATES DISTRICT JUDGE