UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | No. 3:23-CR-00460-M |
| | § | |
| COREY WILSON | § | |

### DEFENDANT'S RULE 33 MOTION FOR A NEW TRIAL

To the Honorable Judge:

After a bench trial held in this Court, Defendant Corey Wilson was found guilty of Counts One and Two of the Superseding Indictment charging violations of the National Firearms Act, specifically, Possession of an Unregistered Machinegun. 26 U.S.C. §§ 5841, 5845(a)(6) and (b), and 5861(d). The district court submitted findings of facts and conclusions of law with the guilty verdict. Dkt. No. 63.

Even though this was a bench trial, and this Court already reached its conclusions on the issues raised below, Mr. Wilson files this Rule 33 motion before the expiration of 14 days after the verdict was announced to sufficiently preserve the arguments for appeal. Fed. R. Crim. P. 33(b)(2). Mr. Wilson raises two issues: (1) that the government failed to prove beyond a reasonable doubt that he knew that the items he possessed had characteristics that brought it under the statutory definition of a machinegun and (2) that the National Firearms Act's definition of machinegun is unconstitutionally vague on its face and as applied to Mr. Wilson's case.

For all the reasons stated herein, Mr. Wilson respectfully asks this Court to reconsider the evidence and testimony presented at trial and grant a new trial in the interest of justice. *See* Fed. R. Crim. P. 33(a).

1

## **Table of Contents**

Index of Authorities ................................................................................................................. 3

Procedural History ................................................................................................................... 4

Legal Standard for Rule 33 ..................................................................................................... 4

Statement of the Facts ............................................................................................................. 5

    1.    The Investigation ........................................................................................................ 5

    2.    Trial Testimony.......................................................................................................... 7

Arguments ................................................................................................................................ 9

    1.    The Government failed to prove beyond a reasonable doubt that Mr. Wilson had knowledge that the items he possessed had characteristics that brought them under the statutory definition of a machinegun. ...................................................................................... 9

    2.    The National Firearms Act is unconstitutionally vague on its face and as applied to Mr. Wilson. ................................................................................................................................. 13

Conclusion ............................................................................................................................. 15

Certificate of Service ............................................................................................................. 16

# Index of Authorities

**Cases**

*Doe I v. Landry*, 909 F.3d 99 (5th Cir. 2018) .................................................................. 13
*Hall v. United States*, 286 F.2d 676 (5th Cir. 1960) ........................................................ 4
*Kolender v. Lawson*, 461 U.S. 352 (1983) ...................................................................... 13
*Kucinich v. Tex. Democratic Party*, 563 F.3d 161 (5th Cir. 2009) ................................. 13
*Roark & Hardee LP v. City of Austin*, 522 F.3d 533 (5th Cir. 2008) ............................. 13
*Rogers v. United States*, 522 U.S. 252 (1998) ................................................................ 10
*Staples v. United States*, 511 U.S. 600 (1994) ................................................................ 10
*United States v. Crittenden*, 46 F.4th 292 (5th Cir. 2022) (en banc) ............................... 5
*United States v. Haggerty*, 997 F.3d 292 (5th Cir. 2021) ............................................... 4
*United States v. Hoover*, No. 321CR22S4MMHMCR, 2023 WL 5432950 (M.D. Fla. Aug. 23, 2023) ............................................................................................................................. 12
*United States v. Kay*, 513 F.3d 432 (5th Cir. 1007) ........................................................ 10
*United States v. Ramos-Cardenas*, 524 F.3d 600 (5th Cir. 2008) ................................... 5
*United States v. Scroggins*, 379 F.3d 233 (5th Cir. 2004) .............................................. 5
*United States v. Scroggins*, 379 F.3d 233 (5th Cir. 2004), *vacated on other grounds*, 543 U.S. 1112 (2005) ....................................................................................................................... 5
*United States v. Soto-Silva*, 129 F.3d 340 (5th Cir. 1997) .............................................. 5
*United States v. Tarango*, 396 F.3d 666 (5th Cir. 2005) ................................................ 5
*United States v. Turner*, 674 F.3d 420 (5th Cir. 2012) .................................................. 5

**Statutes**

26 U.S.C. § 5841 .......................................................................................................... 1, 4, 10
26 U.S.C. § 5845 .................................................................................................... 1, 4, 10, 13
26 U.S.C. § 5861 .......................................................................................................... 1, 4, 10

**Rules**

Fed. R. Crim. P. 33 ........................................................................................................ 1, 4, 5

## Procedural History

On November 14, 2023, Corey Wilson was charged by indictment with two counts of Possession of an Unregistered Machine, in violation of 26 U.S.C. §§ 5841, 5845(a)(6) and (b) and 5861(d). Dkt. No. 15. Mr. Wilson entered a plea of not guilty and waived his right to a jury trial. Dkt. No. 30, 33. The Government consented to a bench trial. Dkt. No. 32.

On January 28, 2025, the Grand Jury returned a Superseding Indictment charging Mr. Wilson with the same offenses. Dkt. No. 38. Specifically, that indictment alleged that Mr. Wilson possessed "a firearm, to wit: a machinegun conversion device (sometimes referred to as a 'Swift Link')" on or about May 30, 2023, and June 3, 2023. Dkt. No. 38.

A bench trial was held on February 10, 2025. The district court asked the parties to prepare findings of fact and conclusions of law which were submitted by both sides. On March 27, 2025, this Court read its findings of facts and conclusions of law, ultimately concluding that Mr. Wilson was guilty of the charged offenses. Dkt. No. 63.

## Legal Standard for Rule 33[1]

Federal Rule of Criminal Procedure 33 allows the court to "vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). "If the case is tried without a jury," like it was here, the district court "may take additional testimony and enter a new

---

[1] It is typical for defendants to raise a Rule 29 Motion for a Judgment of Acquittal concurrently with a Rule 33 Motion for New Trial. Because Mr. Wilson's conviction was the result of a bench trial, however, the Fifth Circuit has found it's not necessary to raise a Rule 29 motion in order to preserve a general sufficiency of the evidence challenge. *See United States v. Haggerty*, 997 F.3d 292, 295 (5th Cir. 2021) (citing *Hall v. United States*, 286 F.2d 676 (5th Cir. 1960) (holding that when a defendant pleads not guilty *before a bench trial*, "[t]he plea of not guilty asks the court for a judgment of acquittal, and a motion to the same ends is not necessary.") (emphasis in original)). Mr. Wilson pleaded not guilty prior to the bench trial and subsequently asked for a directed verdict at the close of the Government's case. Dkt. No. 46, 56. He has therefore preserved the issue under *Hall*. Mr. Wilson only mentions this in a footnote out of an abundance of caution and nothing herein should be taken as waiving any arguments, factual or legal, presented in Mr. Wilson's Proposed Findings of Fact & Conclusions of law filed on February 13, 2025.

4

judgment." *Id.* The motion for new trial, except those raising claims of newly discovered evidence, must be filed within 14 days of the verdict. Fed. R. Crim. P. 33(b)(2).

Rule 33 recognizes that if a district court concludes for any reason that the trial has resulted in a miscarriage of justice, the court has broad powers to grant a new trial. *United States v. Scroggins*, 379 F.3d 233, 239 (5th Cir. 2004), *vacated on other grounds*, 543 U.S. 1112 (2005). Nevertheless, motions for a new trial are to be granted with caution. *United States v. Turner*, 674 F.3d 420, 429 (5th Cir. 2012). Even though district courts are vested with the ability to grant a new trial when the interests of justice require it, "this power should be exercised infrequently by district courts, unless warranted by 'exceptional' circumstances." *United States v. Tarango*, 396 F.3d 666, 672 (5th Cir. 2005) (citing *United States v. Scroggins*, 379 F.3d 233, 239 (5th Cir. 2004)). It is the defendant's burden to demonstrate that a new trial is warranted. *United States v. Soto-Silva*, 129 F.3d 340, 343 (5th Cir. 1997).

In reviewing a motion for a new trial based on the weight of the evidence, the district court is permitted to weigh the evidence and assess the credibility of the witnesses. *United States v. Ramos-Cardenas*, 524 F.3d 600, 605 (5th Cir. 2008). However, the court may not reweigh the evidence and set aside the verdict simply because it feels some other result would be more reasonable. *Id.* A new trial should be granted if the verdict is against the great weight of the evidence and therefore results in a miscarriage of justice. *United States v. Crittenden*, 46 F.4th 292, 297 (5th Cir. 2022) (en banc).

## Statement of the Facts

1. **The Investigation**

Mr. Wilson and the government predominately agreed on the facts of the case.[2] In May

---

[2] In an effort to focus the court's attention on the disputed issues, Mr. Wilson entered agreed stipulations

5

2023, agents with the Bureau of Alcohol, Tobacco, Firearms, and Explosives opened an investigation into whether parts known as machinegun conversion devices, sometimes known as Swift Links, were being advertised for sale on an Instagram account operated by Mr. Wilson under the account name "Risktakker214." The following image was posted on an Instagram account operated by Mr. Wilson:



Gov. Ex. 30. Two short clips were also posted depicting similar parts for sale at $150 per item. At the time of these posts, Mr. Wilson was 18 years old, still in high school, and working at McDonald's.

On May 18, 2023, ATF SA Cohn, acting undercover, contacted Mr. Wilson via Instagram to inquire about purchasing some of the parts advertised by Mr. Wilson online. As a result of these conversations, the undercover agent and Mr. Wilson agreed to meet at the McDonald's where Mr. Wilson worked located at 5960 Greenville Avenue, Dallas, Texas, on May 30, 2023. At trial, the video of the undercover purchase was played. Gov. Ex. 27. The undercover agent

---

beforehand. Dkt. No. 50.

can be heard saying, "I'm guessing our target is the kid standing out in front of the McDonald's." Gov. Ex. 27 at 05:08. Discussing the items for sale, the undercover agent questioned whether the pieces were going to break. Gov. Ex. 27 at 07:26. Mr. Wilson, ever the salesman, explained that the items would not break, despite being frail and easily bendable, "cuz see we make these"— *i.e.*, the pieces were handmade. Gov. Ex. 27 at 07:30.

Throughout the sale, Mr. Wilson made statements in an effort to have the agents purchase his items for sale. These included statements intended to make them believe the frail pieces of bent flashing would turn an AR-15 fully automatic. Although originally the deal was four items for $300, Mr. Wilson sold the undercover agent six pieces for $300. Gov. Ex. 1-6. The agent did not attempt to determine whether the pieces were functioning swift links prior to reaching out to Mr. Wilson again.

On June 2, 2023, Mr. Wilson agreed to sell 20 additional parts to the undercover agents for $850. The parties agreed to meet at 9600 Golf Lakes Trial, Dallas, Texas, on June 6, 2023, and the agents purchased the additional parts from Mr. Wilson at that time. Gov. Ex. 7-26.

2. **Trial Testimony**

At trial, SA Cohn testified as to the ATF's investigation and the purchases he made from Mr. Wilson in an undercover capacity. SA Cohn also testified that Mr. Wilson acted as a salesperson would during the buys and made statements in that capacity. He also testified that there was no evidence that Mr. Wilson has ever possessed or even seen an AR-15 in person.

The government's second witness was ATF Firearms Enforcement Officer Eisenbise, who provided expert testimony concerning her examination of the alleged Swift Links. She produced a report dated June 27, 2023, based on her "examination" of Gov. Ex. 1-11. Gov. Ex. 44. That report does not include descriptions of any of the items being examined besides that

7

"Exhibit 1 is silver in color and made from a piece of bent metal material." Gov. Ex. 44. During her testimony, EFO Eisenbise confirmed that she did not do any significant examination of the items. She admitted that she didn't measure the alleged swift links in either their formed or unformed states; she didn't measure the angles of the bend in the metal or locate where each bend was located; she didn't compare the items to known Swift Links; she didn't test the material's durability; and she didn't identify the material the items were made of. She testified that no particular material, specific dimensions, or set bends in the metal leads to the creation of a Swift Link.

During her testimony, FEO Eisenbise also did not state whether it mattered to her conclusion if a part actually works as a functioning Swift Link. She never provided a direct answer. FEO Eisenbise also testified about the test firing she conducted on Gov. Ex. 1 and 7 in December 2023. The chart below provides the results of the test firing:

| Ex. # & Test # | Rounds Loaded | Rounds Fired |
|:---:|:---:|:---:|
| 1-1 | 2 | 1 |
| 1-2 | 2 | 1 |
| 1-3 | 2 | 1 |
| 1-4 | 3 | 2 |
| 1-5 | 3 | 2 |
| 1-6 | 5 | 3 |
| 7-1 | 2 | 1 |
| 7-2 | 2 | 1 |
| 7-3 | 4 | 2 |
| 7-4 | 2 | 2 |
| 7-5 | 3 | 3 |
| **Totals** | **30** | **19** |

Def. Ex. 11. As this chart demonstrates, the first three tests with Exhibit 1 and the first two tests

8

with Exhibit 7 failed to expel more than one round. FEO Eisenbise testified that she attributed the failure to shoot more than one shot to the fact that she was using commercially available ammunition rather than higher grade "federal brand" ammunition. During her testimony, however, FEO Eisenbise agreed that when working properly, a fully automatic weapon should not stop firing until one let's go of the trigger or all the rounds have been fired.

After the presentation of these two witnesses' testimony, the government rested its case. The defense, without objection from the government, admitted Scott Kline's report into evidence. Def. Ex. 25. Mr. Kline is a former special agent with Homeland Security Investigation. He did not testify at trial. In his report, Mr. Kline estimates that the cost of each bent strip of metal to be no more than $0.04. Like Mr. Kline's report notes, SA Cohn and FEO Eisenbise agreed that the strips were similar in appearance and bendability to pieces of aluminum flashing that could be purchased at a hardware store like Lowe's or Home Depot.

## **Arguments**

1. **The Government failed to prove beyond a reasonable doubt that Mr. Wilson had knowledge that the items he possessed had characteristics that brought them under the statutory definition of a machinegun.**

To prove possession of an unregistered machinegun, the government was required to prove that:

(1) the defendant knowingly possessed a firearm;

(2) that this firearm was a machinegun as defined in 26 U.S.C. § 5845(b);

(3) that the defendant knew of the characteristics of the firearm that caused it to be a machinegun;

(4) that this firearm was or could readily have been put in operating condition; and

(5) that this firearm was not registered to the defendant in the National Firearms

9

        Registration and Transfer Record. It does not matter whether the defendant knew that the firearm was not registered or had to be registered.

21 U.S.C. §§ 5841, 5845(a)(6) and (b), 5861(d).

    The third element—the "knowledge" element—was the focus of Mr. Wilson's trial. To that end, the government was required to prove beyond a reasonable doubt that Mr. Wilson knew the items he possessed had characteristics that brought it under the statutory definition of a machinegun. *Rogers v. United States*, 522 U.S. 252, 254 (1998) (citing *Staples v. United States*, 511 U.S. 600, 619 (1994)); *see also United States v. Kay*, 513 F.3d 432, 448 (5th Cir. 1007). This mens rea requirement was laid out by the Supreme Court in *Staples*. In that case, the Court determined that the defendant, who didn't know that his modified rifle had automatic firing capabilities, couldn't be convicted of possessing an unregistered machinegun. *Id.* "[T]he government should have been required to prove that [the defendant] knew of the features of his AR-15 that brought it within the scope of the [National Firearms] Act." *Id.*

    Here, the Government failed to prove beyond a reasonable doubt that Mr. Wilson knew the pieces of scrap metal he possessed and sold to the ATF agent had characteristics that caused it to be a machinegun. No evidence was presented to suggest Mr. Wilson knew that the metal pieces he possessed actually were functioning Swift Links. SA Cohn acknowledged at trial that, just like he did, Mr. Wilson made false statements during the undercover buys in order to secure the sale. Mr. Wilson clearly lacked extensive knowledge of machineguns as evidenced by his explanation as to how to attach his flimsy, homemade items to an AR-15: "pull[] the slide." An AR-15, however, has no slide. Moreover, there was no evidence that Mr. Wilson ever possessed an AR-15 or had seen one before. There was no evidence presented from which this Court could conclude that Mr. Wilson understood that a strip of cheap metal bent by hand constituted a machinegun on its own.

This reality was only exacerbated by the fact that the government, through its presentation at trial, failed to coherently identify what characteristics brought the pieces of scrap metal within the legal definition of a "machinegun." If the government wasn't even able to provide a clear explanation of the requisite characteristics, it's hard to fathom how 18-year-old Mr. Wilson could've been put on notice that his handmade items were illegal machine gun conversion devices.

Throughout her testimony, FEO Eisenbise failed to provide any clear standard for defining a Swift Link. She testified that Swift Links are not required to be made from a particular material, have specific dimensions, or a set number of bends in the metal. She testified repeatedly that a Swift Link is approximately six inches long in its unformed state. This testimony, however, contradicted with the materials and findings contained in her report. Gov. Ex. 44. FEO Eisenbise's report contained an ATF bulletin which stated that "[a]n unformed Swift-Link . . . with attached template which measures approximately 2-7/8 inches" is a machinegun even in its unformed state. Gov. Ex. 44 at 7; Def. Ex. 2. The image included with this bulletin shows specific locations and measurements for the four bends in the metal. Gov. Ex. 44 at 7. The ATF Bulletin also included a description of how to make a Swift Link, which FEO Eisenbise confirmed during her testimony. The bulletin states that a Swift Link is made of durable metal that requires a heat gun and linesmen pliers to bend. Gov. Ex. 44 at 7. But this wasn't the case with Mr. Wilson's Swift Links. FEO Eisenbise also included several examples of Swift Links found through a Google search online, yet none of these examples showed a Swift Link made of strips of flashing bent in the same locations and into the same shape as Mr. Wilson's. *See* Gov. Ex. 1, 7. There was no comparison of Mr. Wilson's items to known, identified Swift Links.

FEO Eisenbise also provided conflicting testimony about the importance of whether the alleged Swift Links functioned properly and were capable of shooting more than one shot with a

single pull of the trigger. As the chart with the results of the test firing show, *supra*, the first three tests with Exhibit 1 and the first two tests with Exhibit 7 failed to expel more than one round. FEO Eisenbise testified that she attributed the failure to shoot more than one shot to the fact that she was using commercially available ammunition rather than higher grade "federal brand" ammunition. But even with the "federal brand" ammunition loaded, none of the tests conducted with Exhibit 1 were successful in firing all the rounds. And it wasn't until the final two tests with Exhibit 7 that all the rounds loaded fired. None of the tests were successful in firing more than three rounds with a single pull of the trigger. But these test results didn't deter FEO Eisenbise or the government from labeling Mr. Wilson's items as illegal Swift Links. At the same time, FEO Eisenbise testified that when working properly, a fully automatic weapon, *i.e.*, a machinegun, should not stop firing until one let's go of the trigger or all the rounds have been fired. *See, e.g.,* 26 U.S.C. § 5845(b). This testimony cannot be reconciled.

      Simply put, FEO Eisenbise failed to provide a clear answer as to what constitutes a swift link. Her testimony demonstrated that there was a complete lack of a meaningful analysis or examination of these items and how they could be labeled as swift links. And this failure to identify the characteristics of what makes the items machineguns is not commonplace. *United States v. Hoover*, for example, involved items alleged to be machineguns, which were compared to "lightning link" machinegun conversion devices. No. 321CR22S4MMHMCR, 2023 WL 5432950, at *3 (M.D. Fla. Aug. 23, 2023). There, the defendants sold an "Auto Key Card" (which actually could function as an auto key card) on high grade metal with etchings the same size and shape as a lightning link. *Id*. At trial, an ATF agent testified that "the pieces identified by the etchings on the Auto Key Card are the correct material to function as machinegun conversion devices." *Id.* The agent also testified that lightning links had to be made of metal to work in a rifle. *Id.* Further,

12

evidence of their knowledge and experience with firearms were also used to show they understood the characteristics that made the auto key cards lightning links. *Id.* Unlike *Hoover*, here, the government has not provided an objective way to determine whether scrap metal items can be deemed swift links.

The government did not prove beyond a reasonable doubt that Mr. Wilson had knowledge that the strip of cheap, bent metal became a machinegun all by itself. If the government had provided evidence the items Mr. Wilson sold were of the same dimensions or were made from the same material as most Swift Links, it may have changed the analysis. But the government did not do that. The government did not meet its burden on this element and therefore this Court should grant a new trial on this basis.

2. **The National Firearms Act is unconstitutionally vague on its face and as applied to Mr. Wilson.**

At trial, Mr. Wilson argued that the National Firearms Act is unconstitutionally void for vagueness on its face and as applied to him because it does not provide an objective definition of a machinegun. A law can be unconstitutionally vague if it "fails to provide those targeted by the statute a reasonable opportunity to know what conduct is prohibited." *Doe I v. Landry*, 909 F.3d 99, 116 (5th Cir. 2018) (quoting *Kucinich v. Tex. Democratic Party*, 563 F.3d 161, 166 n. 4 (5th Cir. 2009)). Put another way, to survive a challenge for unconstitutional vagueness, a criminal offense must be defined "with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Roark & Hardee LP v. City of Austin*, 522 F.3d 533, 552 (5th Cir. 2008) (quoting *Kolender v. Lawson*, 461 U.S. 352, 357 (1983)).

In this case, the government alleged that Mr. Wilson possessed Swift Links, which are machineguns. Machineguns are included in the definition of "firearm." 26 U.S.C. § 5845(a)(6).

Accordingly, the government was required to prove beyond a reasonable doubt that Gov. Ex. 1 and 7 are machineguns. It failed to do so.

The term "machinegun" means:

any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a single function of the trigger. The term shall also include the frame or receiver of any such weapon, *any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun*, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person.

26 U.S.C. § 5845(b) (emphasis added). The definition of machinegun must be an objective one and it cannot depend on the intent of the maker. As seen in the trial exhibits, the ATF has published several objective definitions of what constitutes a Swift Link. FEO Eisenbise's report contained an image of an unformed Swift Link with measurements and a template for the bends. Gov. Ex. 44 at 7; Def. Ex. 21 at 2. The ATF also has previously indicated that a Swift Link may be made using a heat gun and linesmen pliers to bend metal following the dimensions seen in the previously mentioned pictures.

At Mr. Wilson's trial, however, the government did not identify a single specific, objective characteristic of Ex. 1 or 7 that made it a machinegun. Instead, the government relied on its claim that the pieces of scrap metal were designed by Mr. Wilson to convert a firearm to shoot automatically. But whether the designer intended for the item to make a firearm automatic cannot be the defining feature. FEO Eisenbise admitted as much during cross-examination. The government's expert confirmed that it's not sufficient to label an item as a machinegun if it was the designer's intent to make something into a machinegun. At no point in the trial was a defining feature ever provided.

By failing to provide an objective definition of a machinegun, Mr. Wilson was subject to

14

prosecution under an unconstitutionally vague statute. Further, by failing to provide a single objective characteristic (size, material, bends, etc.) of a "swift link" or "auto-sear," it resulted in the Court effectively finding that it was the words in the online posting that made it a machinegun—not the physical characteristics of the items pictured in the posting. It cannot be constitutionally sufficient that a defendant faces a felony conviction based on the subjective intent of the designer or on the subjective belief of the individual who designed the alleged Swift Link. Indeed, a lack of objectively identifiable characteristics invites arbitrary prosecutions. As it currently stands and as applied in this case, the statute does not provide defendants with adequate notice as to what they are charged with. The Court's conclusion otherwise was against the great weight of the evidence and constitutes an injustice. Mr. Wilson should be granted a new trial on this basis.

## **Conclusion**

For all the reasons stated, Corey Wilson asks this Court to grant his request for a new trial in the interests of justice.

                                                               Respectfully submitted,

                                                               /s/ *Dan Gividen*
                                                               DAN GIVIDEN
                                                               Attorney for Defendant
                                                               Texas Bar No. 24075434
                                                               18208 Preston Rd. D9-284
                                                               Dallas, Texas 75252
                                                               Telephone: 972-256-8642
                                                               Email: Dan@GividenLaw.com

**Certificate of Service**

I hereby certify that a true copy of the foregoing was served on the U.S. District Court and counsel for the Government in accordance with the Federal Rules of Criminal Procedure on April 10, 2025.

/s/ *Dan Gividen*
DAN GIVIDEN
Attorney for Defendant
